James **FUTRELL** et al., Plaintiffs,

v.

The **COLUMBIA CLUB, INC.,** Defendant.

Elmer **ELLIOTT,** Plaintiff,

v.

The **COLUMBIA CLUB, INC.,** Defendant.

**Nos. IP 69–C–176, IP 69–C–498.**

United States District Court,
S. D. Indiana,
Indianapolis Division.
Aug. 2, 1971.

Eskenazi, Mitchell & Yosha, Indianapolis, Ind., for James Futrell and others.

Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Ind., for Columbia Club.

Virginia D. McCarty, Indianapolis, Ind., for Elmer Elliott.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

These consolidated cases come before the Court on what may be treated as cross motions for summary judgment. The defendant moved to dismiss, supporting that motion with affidavits, Federal Rule of Civil Procedure 12(b), while plaintiffs moved for summary judgment. The Court has determined, with the concurrence of the parties, that the case can be advanced by a resolution of all legal questions, leaving for later trial or agreement the remaining disputed questions of fact. Accordingly, the Court now enters partial summary judgment by this memorandum of decision. Federal Rule of Civil Procedure 56(d).

The actions concern the wage and hour claims of forty-three employees of The Columbia Club, Inc. (hereafter "Club"), a private club in downtown Indianapolis. The Club is an institution that provides solely to its members and their guests a variety of services including guest rooms, dining rooms, health facilities, swimming pool, billiard and card rooms, barbershop and social functions, all operated out of a centrally located club building. The plaintiffs are all employees or former employees of the Club employed as elevator operators, maids, laundresses, dishwashers, doormen and the like. They claim to have been paid less than the minimum wage and to have been undercompensated for overtime during the two year period from April, 1967 to April, 1969. There is no dispute about the actual wages paid or hours worked by the plaintiffs; rather, the Club contends it was not required to comply as it was

not covered or was within a complete or partial exemption from the Act. These issues of coverage and exemption are the main issues before the Court and are proper for resolution on cross motions for summary judgment.

At the outset, defendant challenges the constitutionality of the 1961 amendments to the Fair Labor Standards Act (hereafter "Act" or "FLSA"). These amendments added the concept of an enterprise engaged in interstate commerce, and extended coverage under the Act to all employees of such an enterprise if certain dollar sales tests are met. The basis of the challenge is that the amendments are unconstitutional on their face and as applied to the Club, which claims to be an ultimate consumer of goods.

The United States Supreme Court has considered the validity of the enterprise concept created by the 1961 amendments and has sustained the validity of this form of coverage. Maryland v. Wirtz, 1968, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020. See also Wirtz v. Edisto Farms Dairy, E.D.S.C., 1965, 242 F.Supp. 1. In addition to this approval of the general enterprise concept, the Act has been held constitutional as applied to handlers of goods after they "come to rest" within the state. The modern view is that the Commerce Clause reaches such activity. Wirtz v. Mayer Construction, D.N.J., 1968, 291 F.Supp. 514. Moreover, defendant is not a true ultimate consumer as it resells its food and sundry items. The FLSA amendments are constitutionally applied to the Club.

Having resolved the threshold issue of constitutionality, the Court now takes up the issues of coverage and exemption. In summary, the position of the parties is as follows: Plaintiffs contend the Club was covered prior to the 1966 amendments by then 29 U.S.C. § 203(s) (3) [1] and after 1966 by the present 29 U.S.C. § 203(s) (1).[2] Defendant contends that it was not covered prior to 1966 by failure to meet then 29 U.S.C. § 203(s) (1) [3] and exempt prior to 1966 by then 29 U.S.C. § 213(a) (2) (i), (ii).[4]

1. 29 U.S.C. § 203(s) (3) (pre-1966 amendments): " 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

 . . . .

(3) any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000

 . . . ."

2. 29 U.S.C. § 203(s) (1) (1966 amendments): " 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

(1) during the period February 1, 1967, through January 31, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . and beginning February 1, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 . . . ."

3. 29 U.S.C. § 203(s) (1) (pre-1966 amendments): " 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, . . . and if such enterprise purchases or receives goods for resale that move or have moved across State lines . . . which amount in total annual volume to $250,000 or more

 . . . ."

4. 29 U.S.C. § 213(a) (2) (i), (ii): "The provisions of sections 206 and 207 of this title shall not apply with respect to—

 . . . . .

Defendant also claims a partial exemption prior to 1966 by virtue of then 29 U.S.C. § 213(a) (20).[5] Defendant tacitly admits that it has been covered by present 29 U.S.C. § 203(s) (1)[6] since 1966. However, defendant claims the advantage of the lower rate and higher hours provisions of present 29 U.S.C. §§ 206(b), 207(a) (2) since it claims noncoverage prior to the 1966 amendments.[7] It also claims partial (overtime only) exemptions under 29 U.S.C. § 213 (b) (8), (18).[8] The resolution of these statutory claims is the nub of this suit.

Dealing with such a mass of provisions requires the definition of three critical terms that appear throughout the sections at issue. The first of these terms is "retail or service establishment." Originally, such establishments were exempt from the provisions of the Act. In 1949, however, the Congress amended the FLSA to define this phrase as an establishment more than fifty per cent of whose sales are not for resale and more than fifty per cent of whose sales are recognized as retail in the particular industry. The applicability of the retail establishment exemption

is a question of law. Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734.

The Supreme Court has held that the industry recognition and not-for-resale tests are not the sole tests for the retail exemption. The Court formulated a prior test to the two referred to as the "retail concept," which may be stated as follows: Regardless of the industry notion, are these sales retail within the contemplation of Congress? Idaho Sheet Metal Works v. Wirtz, 1966, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694; Mitchell v. Kentucky Finance Company, 1959, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815. The presence of the retail concept is likewise a question of law. Wirtz v. Broward Marine, Inc., 5 Cir., 1968, 390 F.2d 788; Rachal v. Allen, 5 Cir., 1967, 376 F.2d 999; Goldberg v. Sorvas, 3 Cir., 1961, 294 F.2d 841; Goldberg v. Roberts, 9 Cir., 1961, 291 F.2d 532.

The question for the Court then is whether the Club fits within the "retail concept" as contemplated by Congress and the Department of Labor. Exemptions to the FLSA are narrowly con-

(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—
(i) is not in an enterprise described in section 203(s) of this title, or
(ii) is in such an enterprise and is a hotel, motel, restaurant, or motion picture theater; or is an amusement or recreational establishment that operates on a seasonal basis . . . ."

5. 29 U.S.C. § 213(a) (20): "The provisions of sections 206 and 207 of this title shall not apply with respect to—

. . . . .

(20) any employee of a retail or service establishment who is employed primarily in connection with the preparation or offering of food or beverages for human consumption, either on the premises, or by such services as catering, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs . . . ."

6. See footnote 2.

7. Such sections provide that employers first brought under the Act by the 1966 amendments have a longer period of time to bring their wages up to the specified minimum than do employers already covered at the time of the passage of such amendments, and are given a corresponding extension with regard to the maximum hours provision.

8. 29 U.S.C. § 213(b) (8), (18): "The provisions of section 207 of this title shall not apply with respect to—

. . . . .

(8) any employee employed by an establishment which is a hotel, motel, or restaurant; or . . .
(18) any employee of a retail or service establishment who is employed primarily in connection with the preparation or offering of food or beverages for human consumption, either on the premises, or by such services as catering, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs . . . ."

strued against the party seeking the exemption. Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed. 2d 393. In the case of clubs the Congress has not spoken. However, long before the events complained of, the Department had promulgated 29 CFR §§ 779.318, 779.319, which specify as an element of the retail concept that the establishment be open to the public. More particularly, in an opinion letter the Administrator of the Wage and Hour Division made clear that the Division did not consider private clubs retail because of this lack of public accessibility. Opinion Letter No. 655, September 5, 1967. See also Opinion Letter No. 983, April 23, 1969; Opinion Letter No. 968, March 19, 1969. These interpretive regulations of the Department may be used by the courts for guidance and are entitled to considerable weight. Mabee v. White Plains Publishing Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124; Baird v. Wagoner Transportation Co., 6 Cir., 1970, 425 F.2d 407; Wirtz v. Keystone Readers Service, Inc., 5 Cir., 1969, 418 F.2d 249; Goldberg v. Sorvas, 3 Cir., 1961, 294 F.2d 841. Similarly, the opinion letters of the Administrator are entitled to weight in courts' determinations of the retail concept. Kelly v. Ballard, S.D.Cal., 1969, 298 F.Supp. 1301.

In addition to the opinion of the Administrator, the idea that public availability is essential to retailing is persuasive as a matter of common usage. Furthermore, these regulations, 29 CFR § 779.319, have been cited and followed by the courts. Wirtz v. Campus Chefs, Inc., N.D.Ga., 1968, 303 F.Supp. 1112; Jackson v. Airways Parking Co., N.D. Ga., 1969, 297 F.Supp. 1366. Similarly, the courts have recognized that public accessibility is part of the retail concept. These cases stress the distinction between natural and locational restrictions and artificial membership restriction. Shultz v. Crotty Brothers Texas, Inc., E.D.Tex., 1970, 310 F.Supp. 761; Wirtz v. Pickett Food Service, D.N.M., 1968,

304 F.Supp. 784. Most persuasive to the Court is the holding in Shultz v. Deane Hill Country Club, Inc., 6 Cir., 1970, 433 F.2d 1311, aff'g E.D.Tenn., 1969, 310 F. Supp. 272, that the private club there involved was not a retail and service establishment; reliance was placed on the same regulations above cited. Finally, by the 1971 revisions to 29 CFR § 779, the list of establishments to which the retail concept does not apply was expanded to include "clubs and fraternal organizations with a select or restricted membership." 29 CFR § 779.316.

■ The Court holds that the Club is not a retail and service establishment.

■ The second key definition within the statute is "hotel, motel, and restaurant." These are also words of exception and should be strictly construed against the defendant. As with the retail exemption, the construction of the Department should be considered. The regulations require that a hotel be open to the public. 29 CFR § 779.383. Opinion Letter No. 767, December 6, 1967, holds squarely that a club does not qualify as a hotel, for want of compliance with this requirement. On the other hand, the Administrator has taken inconsistent positions as to whether a private club may or may not utilize the § 213(b)(8) exemption for its food service personnel. In Opinion Letter No. 773, March 1, 1968, he held that the exemption was *available to restaurant employees of a* private country club, but in Opinion Letter No. 841, July 24, 1968, having to do with such employees of a club similar to defendant, he declined to take a position.

■ There are apparently no reported cases dealing with the hotel/motel/restaurant exception. The Court determines that the Administrator's opinion is correct as regards a club rendering hotel service, and that consistency requires that the same rule as to public accessibility be applied to a club rendering restaurant service. In other words, restaurants may not refuse service to the general public and retain the exemption. It should be noted that the

defendant fails to claim that it is in fact a hotel or restaurant; on the contrary, its claim is that it is *like* a hotel or restaurant. What is clear is that the Club is much more than a mere hotel or restaurant; it is a private social facility. As such it is outside the exemption and the Court holds that the defendant is not a hotel, motel or restaurant within the meaning of § 213(b).

This last discussion leads naturally to the question of whether the Club may be broken down into its divisions to take advantage of the exceptions in the Act, as it attempts to do by way of further defense. The two key words of entity in the Act are enterprise and establishment. The word enterprise is defined as a grouping of related activities and the Club admits it is an enterprise. 29 U.S.C. § 203(r). The term establishment is not defined in the statute. The defendant claims it is several establishments: Room rental, food, beverages, cigar stand, telephone, valet, barbershop, manicuring, health, and Columbian magazine. The employee plaintiffs claim the club is a single establishment.

Although there is no statutory definition, the Supreme Court has defined establishment to be a distinct physical location, thus employing a geographic test. Mitchell v. Bekins Van & Storage Co., 1957, 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed. 2d 589; A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095. See also Shultz v. Adair's Cafeterias, Inc., 10 Cir., 1969, 420 F.2d 390; Mitchell v. Birkett, 8 Cir., 1961, 286 F.2d 474; Mitchell v. E. G. Shinner & Co., 7 Cir., 1955, 221 F.2d 260. These cases all dealt with multiple unit (chain) enterprises in which each location was held to be a single establishment. The converse principle is that a single location with several departments, such as a department store, is but a single establishment. Gilreath v. Daniel Funeral Home, Inc., 8 Cir., 1970, 421 F.2d 504; Acme Car & Truck Rentals, Inc. v. Hooper, 5 Cir., 1964, 331 F.2d 442; Mitchell v. Gammill, 5 Cir., 1957, 245

F.2d 207. Thus, added to the geographic test is a second of functional unity.

The position of the Department is stated at 29 CFR §§ 779.303–779.305. The last of these sections states the test for recognition of separate establishments on a single premises to be threefold: (1) physical separation, (2) functional disunity, and (3) no interchange of employees. This test was approved and followed by the Eighth Circuit in Gilreath v. Daniel Funeral Home, Inc., *supra,* where the issue was held to be one of law for the Court. See also Acme Car & Truck Rentals, Inc. v. Hooper, *supra.* In the case of the Club, there is no physical separation, as the whole club is open to members. Food and drink are served together, and are available to be served anywhere in the club, and barber and manicuring are together, to give just a few examples. Clearly, the club is a single functional unit of many related services. As such, it is a single establishment.

With the critical definitions determined, it is possible to resolve the questions of coverage and exemption. First, plaintiffs contend that the defendant Club was covered prior to the 1966 amendments as a residual enterprise establishment. 29 U.S.C. § 203(s) (3) (1965 ed.). To be so covered the Club must be an establishment of an enterprise with at least two employees engaged in commerce or the production of goods for commerce, the establishment must be residual in the sense of not being a retail establishment, a street railway, a construction enterprise, or gasoline service, and the enterprise must have annual sales exceeding $1,000,000.00.

As determined above, the Club is an enterprise with a single establishment. Defendant has admitted that it has employees in commerce who make interstate phone calls, who bill out of state members, and who buy from out of state suppliers, to name a few activities. Mitchell v. Joyce Agency, 7 Cir., 1954, 211 F.2d 241, 248, rev'd on other grounds, 348 U.S. 945, 75 S.Ct. 436, 99

L.Ed. 740. The Club is a residual enterprise and not a retail or service establishment or other category. Cf. 29 U.S.C. § 203(s) (1) (1965 ed.). Lastly, the Club admits to sales in excess of one million dollars prior to 1966. Therefore, the Court concludes that the Club is a covered enterprise establishment under the law prior to 1966. Similarly, the defendant is covered presently as the 1966 amendments merely lowered the dollar sales test already met by the Club. 29 U.S.C. § 203(s) (1) (1970 Supp.).

 Defendant contends that it may take advantage of several exemptions in the FLSA. First, it claims the exemption for retail establishments in 29 U.S.C. § 213(a) (2) (i), (ii), (1965 ed.). As discussed above, the Club is not a retail establishment. Additionally, § 213(a) (2) (ii) does not apply as the Club is not a hotel or restaurant. It next seeks to take advantage of the exemption provided for certain food service employees in 29 U.S.C. § 213(a) (20) (1965 ed.), and 29 U.S.C. § 213(b) (18) (1970 Supp.). This exemption was meant to cover commissaries, catered food services, and the lunch counters of drug and department stores. See 29 CFR § 779.393. In every case, however, the employer must be a retail or service establishment, as the Club is not. Defendant argues from the wording of § 213(b) (18) [9] that clubs are retail establishments. However, the location in the section of the phrase " . . . or to members . . . of clubs" plainly indicates that the intent is merely to extend the benefits of the section to retail or service establishments when serving such customers. In other words, the section applies to independent caterers when serving members of clubs. Thus, the defendant cannot take advantage of these food service employee exceptions, either prior to or after 1966.

Defendant claims for partial exemption under 29 U.S.C. § 213(b) (8), but as held above such exemption does not apply to private clubs. Lastly, the Club is not entitled to pay the lower initial rates because the Club was covered prior to the 1966 amendments. In summary, the defendant Club is not entitled to claim any of the exemptions and is a covered enterprise both before and after the 1966 amendments to the Act.

 Finally, it is defendant's contention that should it be held liable, it is entitled to a setoff for certain fringe benefits paid its employees. These fringes consist of meals, health insurance, Christmas bonuses, and paid vacations. Both parties are agreed that defendant is entitled to a reasonable credit for meals. As regards overtime, the statute provides that bonuses, insurance and vacations are not to be added to the base rate of pay nor credited on overtime due. 29 U.S.C. §§ 207(e) (1), (3), (4), 207(h). For additional authority on this point see 29 CFR §§ 778.211, 778.212, 778.216; Bable v. T. W. Phillips Gas and Oil Co., 3 Cir., 1961, 287 F.2d 21; Roland Electrical Co. v. Black, 4 Cir., 1947, 163 F.2d 417; Goldberg v. Bailey, S.D.Cal., 1961, 42 L.C. ¶ 31,097; Freeman v. Blake Co., D.Mass., 1949, 84 F. Supp. 700.

Although the overtime credit issue is clear, there is very little authority on the question of credit against minimum wages due for these items. There is no statutory or case authority on point for bonuses and vacations. As for insurance, the regulations allow credit only where the payment is voluntary with the employee. 29 CFR § 531.40; Opinion Letter No. 604, May 22, 1967. The Court sees no reason to treat the bonus and vacation payments any differently from the insurance. Similarly, the fringe payments should not be credited on back wages any more than on overtime due. Bonus and vacation payments partake more of gratuities and are not entitled to credit. Therefore, credits are allowed only for meals and not for Christmas bonuses, health insurance and vacation pay.

9. Provisions set out in footnote 8. Note that the wording of the prior § 213(a) (20) is identical.

574

In accordance with the foregoing, the Court now grants partial summary judgment for the plaintiffs, finding the law on coverage and exemption to be as set forth above. It is now a matter for the parties to stipulate the actual sums due each of the forty-three plaintiffs and determine credits due for meals. The parties are also directed to attempt to arrive at stipulations regarding plaintiffs' attorneys' fees and entitlement to liquidated damages, if any, and to file all stipulations within thirty days from the date hereof. If the parties are unable to reach agreement in full, they are further directed to stipulate to the greatest extent possible, and also to file a statement as to the specific remaining areas of disagreement.