William E. BROCK, Secretary of
Labor, Plaintiff-Appellee,

v.

LOUVERS AND DAMPERS, INC.
d/b/a Bel-Wood Country Club
and Ted Stacy, Defendants-Appellants.

No. 85–4004.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 12, 1987.

Decided May 1, 1987.

Elizabeth W. Boncella, U.S. Dept. of Labor, Cleveland, Ohio, Linda Jan S. Pack (argued), William J. Stone, Washington, D.C., for defendants-appellants.

Sidney Weil, Mark Wasserman (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before MARTIN, NELSON and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

This case requires us to decide whether the seasonal "amusement or recreational establishment" exemption to the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938 ("FLSA") requires that such establishments be open to

the general public. The Secretary of Labor brought suit in district court to force Bel-Wood Country Club, a private for-profit golf club in Morrow, Ohio, to comply with the minimum wage and overtime provisions of the FLSA. By consent of the parties, the case was tried to final judgment before a United States Magistrate, with direct appeal to this court pursuant to 28 U.S.C. § 636(c)(3). The magistrate held that Bel-Wood was not entitled to the seasonal recreational or amusement exemption because it was not open to the public. Bel-Wood appeals that judgment.

After consideration of the FLSA, its legislative history, and the 1966 amendments, we conclude that Congress did not intend to incorporate a public accessibility requirement into the amusement or recreational exemption. We therefore reverse the magistrate's order and remand to the district court for further proceedings to determine whether Bel-Wood meets the seasonality requirement of the exemption.

Bel-Wood operates eight to ten months of the year, depending on the weather. Its primary business is golf, although the facilities include tennis courts, a swimming pool, and a dining facility. Bel-Wood employs a seasonal greens crew and greens superintendent, and seven full-time and seven part-time food and drink employees.

Bel-Wood's membership was limited to 305 members. It solicited members through newspaper advertisements in local papers in March 1984, in which it described the club as "private" and "open exclusively to members and their guests." The golf course was available for use by local organizations on Mondays by special arrangement. Prospective members were requested to have a current member sponsor them, but sometimes applicants were admitted without a sponsor. Ted Stacy, the president of Louvers and Dampers, determined who would be approved for membership. No person who was able to pay the membership fees and dues was ever refused membership. Initiation fees ranged from $200 to $1,500 and annual dues ranged from $250 to $1,100 depending on the type of membership.

The amusement-recreation exemption at issue is codified at 29 U.S.C. § 213(a)(3):

(a) The provisions of § 206 [minimum wage] ... and § 207 [overtime compensation] of this title shall not apply with respect to—

\*　　\*　　\*　　\*　　\*　　\*

(3) any employee employed by an establishment which is an amusement or recreational establishment ... if (A) it does not operate for more than seven months in any calendar year or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year....

The magistrate determined that the exemption was available only to establishments that were open to the general public, basing this interpretation on the purpose of the act, the legislative history, and the administrative interpretation by the Labor Department.

█ The FLSA was passed in 1938. It was designed to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers. 29 U.S.C. § 202(a). Exemptions under the FLSA are to be construed narrowly against the employer asserting them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Hamblen v. Ware*, 526 F.2d 476, 477 (6th Cir.1975). The employer has the burden of proving entitlement to the exemption. *Arnold, supra*, 361 U.S. at 394, 80 S.Ct. at 457; *Brennan v. Southern Productions, Inc.*, 513 F.2d 740, 744 (6th Cir. 1975).

Over the years, Congress expanded the scope of the act to include millions of workers not originally protected under the act. Certain groups of employees were exempted at the same time. The original version of the exemption at issue here was enacted in the Fair Labor Standards Amendments of 1961. Pub.L. No. 87–30, 75 Stat. 71 (1961). Certain types of retail or service establishments were exempted, including hotels, motels, restaurants, movie theaters

and seasonal amusement or recreational establishments. The Senate Committee Report described the provision:

> (c) Amusement and recreational establishments operating on a seasonal basis. —A similar exemption, without regard to the annual sales volume of the enterprise, is provided for employees of amusement and recreational establishments operating on a seasonal basis. These establishments are typically those operated by concessionaires at amusement parks and beaches and are in operation for 6 months or less a year.

S.Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News at 1620, 1647–48.

"Amusement or recreational establishment" was not defined in the statute itself, but the regulations drawn from the legislative history provide the following definition:

> "Amusement or recreational establishments" as used in section 13(a)(3) are establishments frequented by the public for its amusement or recreation.... Typical examples of such are the concessionaires at amusement parks and beaches.

29 C.F.R. § 779.385.

Public accessibility has been held to be essential to the retail and service exemption. *Futrell v. Columbia Club, Inc.*, 338 F.Supp. 566, 571 (S.D.Tenn.1971); *Shultz v. Deane-Hill Country Club, Inc.*, 310 F.Supp. 272, 278 (E.D.Tenn.1969), *aff'd per curiam*, 433 F.2d 1311 (6th Cir.1970). The courts in these cases relied on the Administrator's opinions holding that private clubs are not retail establishments because they lack public accessibility, *Wage and Hour Opinion Letter No. 655*, CCH Labor Law Reporter ¶ 30,646 at 42,047 (September 5, 1967); *Wage and Hour Opinion Letter No. 983*, CCH Labor Law Reporter ¶ 30,526 at 41,929 (April 23, 1969); *Wage and Hour Opinion Letter No. 968*, CCH Labor Law Reporter ¶ 30,506 at 41,907 (March 19, 1969), and on Labor Department regulations stating that retail or service establishments must be open to the general public

to qualify for the exemption. 29 C.F.R. §§ 779.318, 779.319.

Those cases do not dispose of the issue in this case, however. They are concerned with interpreting Congressional intent as to the meaning of the concept of a "retail" establishment. They determine that public accessibility is necessary to the "retail concept," but the relevant distinction is between retail and wholesale establishments. Distinguishing between public and private establishments is only a means to that end.

In 1966, the exemption for amusement and recreational establishments was revised and taken out of the retail and service exemption. Pub.L. No. 89–601, Title II, § 201, 80 Stat. 833–838 (1966); S.Rep. No. 1487, 89th Cong., 2nd Sess. *reprinted in* 1966 U.S.Code Cong. & Admin.News 3002, 3030. "The current wording seems to have been intended to establish criteria for seasonality, and—by eliminating the 'retail and service' language—to make plain that employees of seasonal amusement or recreational companies generally are exempt." *Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1329 (1st Cir.1977).

Bel-Wood argues that the requirement of public accessibility applies only to the retail concept of the retail and service exemption, and should not be carried over into the now separate seasonal amusement-recreational exemption.

The Wage and Hour Administrator, however, has continued to interpret § 13(a)(3) as exempting only those establishments that are open to the general public. *Wage and Hour Opinion Letter No. 655, supra,* states that private golf clubs are not entitled to the retail and service exemption of § 13(a)(2), and goes on to state that:

> [T]he section 13(a)(3) exemption for certain amusement or recreational establishments meeting the specific tests of seasonality cannot be utilized by private clubs. The legislative history makes it clear that this exemption was intended for the typical amusement or recreational establishment which is frequented by the public for its amusement or recreation.

*Letter No. 983, supra,* addresses private country clubs and repeats the same statement.

The Secretary argues that authoritative administrative constructions should be given the deference to which they are entitled. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The magistrate stated that "opinions issued by the Administrator of the Wage and Hour Division, U.S. Department of Labor, while not binding upon the Court, constitute a body of experience and informed judgment and are entitled to great weight. *Boutell v. Walling,* 327 U.S. 463 [66 S.Ct. 631, 90 L.Ed. 786] (1946); *Skidmore v. Swift & Co.,* 323 U.S. 134 [65 S.Ct. 161, 89 L.Ed. 124] (1944); *Hamblen v. Ware,* 526 F.2d 476 (6th Cir.1975)."

■ While it is true that courts accord great weight to administrative interpretations of their enabling statutes, the authority of those interpretations remains persuasive and not precedential. Courts may not abdicate their ultimate responsibility to determine Congressional intent. *Zuber v. Allen,* 396 U.S. 168, 193, 90 S.Ct. 314, 328, 24 L.Ed.2d 345 (1969). Unexplained agency constructions have little persuasive value. *SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978).

We do not find the Department of Labor's construction of § 13(a)(3) persuasive. The agency assumes without analysis that the public accessibility requirement of the retail exemption must also be included in the seasonality exemption. The agency's bald statement that the legislative history is clear does not make it so. The department's legislative history relies only on statements made during the passage of the 1961 exemption, before the seasonality exemption was separated from the retail exemption in the 1966 amendments. And even those statements do not mandate a public accessibility requirement, but simply give as examples of exempted facilities those which cater to the general public such as concessionaires at amusement parks and beaches.

■ After consideration of the language and purpose of the retail and service exemption and the seasonal amusement-recreational exemption, we conclude that Congress did not intend a public accessibility requirement in the seasonal exemption. The seasonal exemption serves a completely different function than the retail and service exemption.

The purpose of the retail or service establishment exemption is clear from the legislative history. Congress wanted to exempt small local retail establishments, epitomized by the corner drugstore, or more recently, the neighborhood bodega or grocery. These local concerns did not sufficiently affect interstate commerce to warrant imposing the wage and hour requirements upon them. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 497, 65 S.Ct. 807, 810, 89 L.Ed. 1095 (1945); *Homemakers Home and Health Care Service v. Carden,* 538 F.2d 98, 102 (6th Cir.1976).

The purpose of the seasonal amusement or recreational establishment exemption was not clearly spelled out in the legislative history of either the 1961 or 1966 amendments. However, there is some useful legislative history discussing a proposed 1965 amendment to the FLSA. The House Committee Report stated that the amusement and recreational establishment exemption would cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities...." H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965). Although the proposed amendment was not passed, the legislative history is relevant because the following year Congress enacted a similar amendment including the amusement and recreational exemption. *See Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115, 1118 n. 8 (5th Cir.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 175, 42 L.Ed.2d 140 (1974).

The Tenth Circuit found that the purpose of the exemption was "to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." *Brennan v. Yellowstone Park Lines,* 478 F.2d 285, 288 (10th Cir.), *cert. denied,* 414 U.S. 909, 94

S.Ct. 228, 38 L.Ed.2d 147 (1973). The logical purpose of the provision is to exempt the type of amusement and recreational enterprises listed above, which by their nature, have very sharp peak and slack seasons. These businesses argue that they should not be held to the same wage and hour requirements as permanent, year-round operations. Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards. Congress responded to these concerns by enacting the amusement and recreational exemption.

The crucial question for the purpose of determining whether or not a business falls within the exemption is whether or not it is truly seasonal, and not whether it is open to the general public without charge, with a fee, or to a smaller group of members, with or without fee. There is no need to differentiate between retail and wholesale establishments in the seasonal exemption, so the public/private distinction is no longer relevant. There is no economic rationale for exempting employees of seasonal public facilities from the coverage of the FLSA, but not exempting employees doing exactly the same work at private facilities. We find no indication that Congress intended to make such a distinction. We conclude that § 13(a)(3) does not include a public accessibility requirement, and that accordingly, Bel-Wood may avail itself of the exemption if it meets the seasonality requirements of the exemption.

The magistrate did not reach the question of whether Bel-Wood could meet the seasonality test in the exemption. Bel-Wood cannot meet the first seasonality test as it is concededly open for more than seven months of the year. However, § 13(a)(3) also provides exemptions for those businesses whose "average receipts for any six months of [the preceding calendar year] ... were not more than 33⅓ per centum of its average receipts for the other six months of such year...." Neither the statute nor the regulations promulgated by the Department of Labor give any indication as to what method of accounting should be used to calculate "receipts" for the purposes of the exemption.

There are several different ways that Bel-Wood's "receipts" could be calculated. Most of Bel-Wood's income comes from membership fees. Annual fees are due in April and can be paid in one lump sum or in monthly installments throughout the year. The Secretary argues that Bel-Wood cannot meet the second seasonality test, because its bank deposits for the the lowest six months of 1985 were 63.5 percent of the deposits for the highest six months and the same figure in 1984 was 63 percent.

Bel-Wood argues that it uses an accrual accounting method and therefore counts all membership fees as income for the month of April. Under this theory, Bel-Wood would meet the second seasonality test. Alternatively, if membership fees were prorated over the time that members received the value of the services, "receipts" for the lowest six months of the year might be either higher or lower than the triggering 33⅓ per cent. We believe a remand to the district court is necessary to determine what method of accounting accurately reflects Bel-Wood's "receipts" for the purposes of the seasonality exemption.

The magistrate's order is REVERSED, and the case is REMANDED to the district court for further proceedings in accordance with this opinion.