**Troy ADAMS, David Roulo, Wayne Carlisle, and Shawn Adams, Plaintiffs,**

v.

**DETROIT TIGERS, INC., Defendant.**

**No. 96–73516.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 24, 1997.

David C. Brunell, Brunell & Check, Dearborn, MI, for Plaintiffs.

Richard J. Seryak, Joseph G. Sullivan, Miller, Canfield, Paddock and Stone, P.L.C., Detroit, MI, for Defendant.

COHN, District Judge.

### MEMORANDUM AND ORDER

#### I.

This is a wage-hour case. Plaintiffs Troy Adams, David Roulo, Wayne Carlisle, and Shawn Adams (collectively referred to as "plaintiffs") were "batboys" for defendant Detroit Tigers, Inc. (Tigers), a major-league baseball team. Plaintiffs chiefly claim that they were not paid overtime compensation and minimum wages for their work, in violation of state and federal laws. Plaintiffs initially asserted five claims against the Ti-

gers; they have voluntarily dismissed two claims.[1] The following claims continue: (1) violation of the Fair Labor Standards Act of 1983 (FLSA), 29 U.S.C. §§ 206, 207, particularly for failure to pay overtime compensation and for paying less than $4.25 an hour; and (2) violation of the Michigan Minimum Wage Law, M.S.A. § 17.255(1) *et seq.*, including failure to pay overtime compensation.

The Tigers move for summary judgment, arguing that they are exempt as an amusement or recreational establishment that either operates for not more than seven months in a calendar year, or has average receipts for any six months of a calendar year which are less than 33⅓ of average receipts for the remaining months of that year. Plaintiffs oppose the motion, arguing that there is a genuine issue of material fact as to whether the Tigers qualify for any exemption.

For the reasons that follow, the Tigers' motion is GRANTED, and the case is DISMISSED.

#### II.

Plaintiffs are former batboys who worked in the home-team clubhouse at Tiger Stadium in Detroit during the major-league baseball season, which typically runs for seven months from April through October. The 1992 through 1995 seasons are at issue.

Although a batboy is most visible to the public when he wears a baseball uniform and handles equipment on the field during games, the job demands behind-the-scenes work as well. Batboys pass out towels and uniforms, clean spikes, stock the coolers, vacuum the floor, and generally perform cleaning and straightening duties on a daily basis. During a game, only one batboy at a time wears a uniform and performs field duties, while other batboys are in the dugout, answering telephones or acting as "runners." Work is not constant, and batboys find time to read, do homework, or watch television while on duty. Batboys only work at home games.

---

**1.** Plaintiffs have voluntarily dismissed claims alleging violation of the Michigan Whistleblowers'

Protection Act, M.S.A. § 17.428(1) *et seq.*, and wrongful discharge.

In a memorandum from the Commissioner of Baseball, dated April 2, 1991, the Tigers were informed that federal minimum wage laws did not apply to certain ball club employees, among them batboys, as the Tigers offer seasonal employment qualifying for an exemption from the minimum wage laws. The memorandum stated:

> The exemption applies beyond stadium cleaners to any employee whose duties are defined by the seasonal nature of professional baseball and are related to stadium operations, such as ticket takers, ushers, bat boys, clubhouse workers, etc.

Plaintiffs were paid $45 a day at Tiger Stadium,[2] regardless of whether they worked four to five hours on non-game days or ten to twelve hours on game days. Plaintiffs also received compensatory meals and soft drinks, free parking, and game tickets. Baseball players tipped them during and at the end of the baseball season. A typical batboy could earn in excess of $1500 in tips in a season. Each batboy also took one expense-paid, work-free road trip with the players during the season.[3]

The Tigers did not completely shut down their operations during the off-season. Tiger Stadium, however, was closed to the public from November through March in each of the years 1992 to 1994. For each year 1992 through 1995, the Tigers state that their average monthly receipts for the six months with the lowest receipts were less than 33⅓ of the average monthly receipts of the six months with the highest receipts. Scott Fisher[4] (Fisher), Controller of the Tigers, made these calculations according to criteria in the Field Operations Handbook of the United States Department of Labor, which states:

> Since language of [29 U.S.C. § 213(a)(3) ] refers to receipts for any six months (not necessarily consecutive months), the monthly average based on total receipts for the six individual months in which the receipts were smallest should be tested against the monthly average for six individual months when the receipts were largest to determine whether this test is met.

Plaintiffs do not challenge Fisher's figures.

### III.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). In so doing, "the court must construe the evidence most strongly in favor of the party opposing the motion." *United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

### IV.

#### A.

▮▮▮ The Tigers argue that they are not subject to the overtime compensation and minimum wage requirements of the FLSA, 29 U.S.C. §§ 206, 207, because they are exempt under 29 U.S.C. § 213(a)(3). The Tigers are correct; they qualify for the exemption because they are an amusement or recreation establishment with average off-season receipts less than one-third of average in-season receipts.

The overtime and minimum wage restrictions of the FLSA do not apply to:

---

2. In April 1993, the Tigers increased the per diem rate from $35 to $45.

3. Batboys did not receive this benefit during the baseball strike in the summer of 1994.

4. Fisher stated in deposition that he performed the calculation for the years 1993, 1994, and 1995. In an affidavit, he stated that he performed the calculations for 1992 as well.

any employee employed by an establishment which is an amusement or recreational establishment ... if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year....

29 U.S.C. § 213(a)(3). The Tigers " 'must show that they are plainly and unmistakably within [the] terms and spirit' of the exemption." *Bridewell v. The Cincinnati Reds*, 68 F.3d 136, 138 (6th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996) (quoting *Brennan v. Southern Productions, Inc.*, 513 F.2d 740, 744 (6th Cir. 1975)).

### B.

First, the Tigers have shown that they are an establishment run for amusement or recreational purposes. An "establishment" is a "distinct physical place of business"—in this case, the Tigers' establishment at Tiger Stadium, and not the Tigers' organization as a whole. 29 C.F.R. § 779.303 ("The term 'establishment' ... is not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations. In such a multiunit operation some of the establishments may qualify for exemption, others may not."). Major-league baseball teams may properly be considered "recreational" establishments, or establishments designed for "amusement." *See, e.g., Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 595 (11th Cir.1995) ("Sarasota White Sox, Inc. is an amusement and recreational establishment pursuant to 29 U.S.C. § 213."). The Wage and Hour Administrator of the United States Department of Labor has said:

> The minimum wage and overtime compensation exemption provided by Section 13(a)(3) is restricted to employees of seasonally operated amusement or recreational establishments. This category of establishments includes such seasonal recreational or amusement activities as

amusement parks, carnivals, circuses and *sports events* ...

Opinion Letter of the Wage–Hour Administrator, [Wages–Hours] Lab. L. Rep. (CCH) ¶ 31,057, at 42,612 (Aug. 10, 1076) (emphasis added).

### C.

Plaintiffs do not dispute that the Tigers as a whole are a recreation or amusement establishment. Plaintiffs say, however, that batboys are a separate establishment within the Tigers, likening them to employees in administrative offices of a sports team. *See* 29 C.F.R. § 779.305 ("[T]wo or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions."). Citing an opinion letter of the Wage and Hour Administrator, plaintiffs argue that batboys are a separate establishment within sports teams, without recourse to the public, and that therefore the FLSA governs their employment. *See* Opinion Letter of the Wage–Hour Administrator, [Wages–Hours] Lab. L. Rep. (CCH) ¶ 31,256, at 43,165 (Oct. 11, 1978) ("It is also evident that the administrative offices of the [basketball team] comprise a separate establishment on the premises of the Arena, but it is not an establishment to which the general public has recourse for its amusement or recreation.")

While plaintiffs assert that there is a genuine issue of material fact as to whether batboys comprise a separate establishment within the Tigers, they offer nothing to counter the Tigers' arguments that batboys more closely resemble ticket-takers, ushers, and other event personnel, who are not typically considered separate establishments under 29 U.S.C. § 213(a)(3).[5] Although plaintiffs posit that because some of batboys' work is not open to the public, they are like administrative personnel, "Congress did not intend a public accessibility requirement in the seasonal exemption." *Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1258 (6th Cir.

5. For example, in *Jeffery,* the Eleventh Circuit never even considered whether groundskeepers, who mow the lawn and chalk lines for fields in preparation for baseball games, are a separate establishment akin to year-round administrative personnel. *Jeffery,* 64 F.3d at 592–93.

1987). In any event, all batboys are accessible to the public when they take turns dressing in uniform and performing field duties.

The Tigers have shown that the work of batboys exclusively concerns the staging of baseball events. Unlike administrative or office personnel, batboys do not work independently of baseball players. Batboys work only at home games or in preparation for home games, and they do nothing resembling the office duties of administrative personnel. Plaintiffs cannot rely on mere allegation to counter the Tigers' showing that batboys are an intrinsic part of the Tigers' recreational and amusement establishment. *Gregg v. Allen–Bradley Co.* 801 F.2d 859, 861 (6th Cir. 1986) ("[The] nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.").

### D.

### 1.

In order to qualify for the recreational or amusement establishment exemption under 29 U.S.C. § 213(a)(3), however, the Tigers must also show either that the establishment operated for not longer than seven months in a year, or that off-season receipts were less than one-third of in-season receipts in a calendar year.

First, it is undisputed that Tiger games are not played during the months of November through March, limiting batboys' employment to only seven months of the year. Similar evidence was insufficient to entitle the Cincinnati Reds to an exemption. In *Bridewell,* the Sixth Circuit said:

> The proper inquiry is ... whether the Reds operate for more than seven months per year, not whether they are an entity that provides amusement or recreation for its customers for more than seven months per year.

*Bridewell,* 68 F.3d at 138–39. Since the Tigers generally are a year-round operation, they cannot qualify for an exemption under the seven-month test without showing, for example, that they employ an insignificant number of employees during the five months

that Tiger Stadium is closed to the public. *See id.* at 139.

### 2.

As noted above, Fisher has calculated the Tigers' off-season receipts in relation to in-season receipts and determined that, for each year from 1992 to 1995, the average of six months of off-season receipts is less than 33⅓ of the average of in-season receipts for the rest of the year. Since plaintiffs do not dispute Fisher's calculations, the Tigers have shown that they are an establishment qualifying for an exemption from the minimum wage and overtime requirements of the FLSA.

### V.

The Tigers also contend that the Michigan Minimum Wage Law, M.S.A. § 17.255(1) *et seq.,* does not apply to batboys' employment, arguing *inter alia* that the Tigers qualify for an amusement or recreation exemption under state law. The Tigers fall under the statutory exemption applying to amusement or recreational establishments operating for not more than seven months in a year.

Under M.S.A. § 17.255(4a), Michigan minimum wage and overtime law does not apply to "an employee employed by an establishment which is an amusement or recreational establishment, if the establishment does not operate for more than 7 months in a calendar year." M.S.A. § 17.255(4a)(4)(d). Rule 28 of the Michigan Administrative Code further defines:

(1) An employer's business shall be considered an amusement or recreational establishment if it complies with all of the following provisions:

(a) It is open for the general public at a fixed site.

(b) It is open primarily to provide leisure activities for those who attend.

(c) It does not operate for more than 7 months in a calendar year....

(3) The exempt status of an amusement or recreational establishment and a grocery store, restaurant, motel, curio, souvenir shop, or other retail and ser-

vice establishment operated under the same ownership shall be determined separately for each establishment.

Mich. Admin. Code r. 408.728 (1981).

No published decision of a Michigan court has interpreted this exemption. Under the plain statutory language of the exemption and administrative rule, however, the Tigers are open to the public at a fixed site and provide leisure activities to those who attend. As stated above, Tiger Stadium does not offer recreation or amusement, i.e., does not "operate," for more than seven months in a year. Thus the Tigers are exempt from Michigan wage and hours laws.[6]

## VI.

For the reasons stated above, the Tigers' motion is GRANTED, and this case is DISMISSED.

SO ORDERED.

---

**6.** Although this finding may seem inconsistent with *Bridewell*, the Sixth Circuit's decision is not applicable to Michigan law. Indeed, the Sixth Circuit's discussion of year-round operation is broader than other determinations of length of operation under the FLSA. The Eleventh Circuit, for example, found that "the focus is on length of the Defendant's seasonal operation." *Jeffery*, 64 F.3d at 596. "29 U.S.C. § 213(a)(3) does not require Defendant to completely shut down or to terminate every employee at the end of each baseball season." *Id.*

Further, *Bridewell* differs factually. In *Bridewell*, plaintiff maintenance workers worked year-round, both for the Cincinnati Reds and the Cincinnati Bengals. *Bridewell*, 68 F.3d at 137–38. Here, batboys only work for the Tigers.

Thus although the Court is bound by *Bridewell* in its analysis of length of operation under 29 U.S.C. § 213(a)(3), it will look only to the plain language of the Michigan statute to assess the Tigers' length of operation for that exemption.