Robert R. **BRIDEWELL;** Stanley McAlpin; Daisy S. Pearl; Melville F. Walker; Eddie C. Rogers, Plaintiffs–Appellees,

v.

The CINCINNATI REDS, Defendant–Appellant.

No. 97–3268.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1998.

Decided Sept. 25, 1998.

Peter M. Fox (argued and briefed), Kircher, Robinson, Newman & Welch, Cincinnati, OH, for Plaintiffs–Appellees.

Robert C. Martin (briefed), Martin, Bailey & McDonald, Cincinnati, OH; Randolph H. Freking (argued and briefed), Peter A. Burr (briefed), Freking & Betz, Cincinnati, OH, for Defendant–Appellant.

Before: KEITH, BATCHELDER, and COLE, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court, in which KEITH, J., joined. COLE, J. (p. 832), delivered a separate concurring opinion.

## OPINION

BATCHELDER, Circuit Judge.

In this appeal, the Cincinnati Reds baseball franchise challenges the district court's decision that the Reds does not qualify as a seasonal entertainment establishment under the Fair Labor Standards Act ("FLSA"), and is not, therefore, exempt from the FLSA pursuant to § 213(a)(3)(B). For the reasons stated below, we now affirm the decision of the district court.

### I.

Defendant–Appellant, the Cincinnati Reds, operates a baseball team and employs Plaintiffs–Appellees, Robert Bridewell and others, as a part of its maintenance staff at Riverfront Stadium (now named "Cinergy Field") in Cincinnati, Ohio. Plaintiffs–Appellees brought this suit, claiming that the Reds violated § 207 of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), by refusing to pay an overtime premium (time and one-half) for hours worked in excess of 40 hours per week during the years 1990–1993. The Reds claimed that it should be exempted from the overtime requirements of the FLSA, pursuant to § 213(a)(3)(A), because it was an amusement or recreational establishment that operated for less than seven months out of the year.

The district court granted summary judgment in favor of the Reds, holding that the Reds was "an amusement or recreational establishment" that staged its baseball games during a season that lasted less than seven months out of the year. We reversed the district court's judgment, however, and held that the proper focus was not on the duration of the baseball season, but on the fact that the Reds organization operated year-round with no fewer than 120 employees in the "off-season." Consequently, the Sixth Circuit remanded the case.

On remand, the Reds argued that it should be exempted from the FLSA pursuant to § 213(a)(3)(B), because its average receipts from the six month off-season do not amount to more than 33 and 1/3 percent of its average receipts during the six-month season. Significantly, the Reds stipulated that their argument could be successful only if they were allowed to calculate their "receipts" not according to when the cash was received, but according to when the Reds organization recorded the money as income. The district court ruled against the Reds, holding that, for the purposes of § 213(a)(3)(B), "receipts" means money when it is received.

The Reds now appeal.

### II.

■ Both parties have stipulated to the facts and both agree that the Reds is an "amusement or recreational establishment" within the meaning of § 213(a)(3). Section 213(a)(3) exempts from the FLSA's overtime provisions "any employee employed by an establishment ..., if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year...." 29 U.S.C. § 213(a)(3). Our prior panel decision has made it clear that the Reds does not operate for less than seven months out of the year and is therefore ineligible for the exemption contained in § 213(a)(3)(A). Thus, we must answer the extremely narrow question of whether the district court was correct to hold that, for the purposes of § 213(a)(3)(B), "receipts" refers to money that is actually received by the amusement establishment, regardless of which accounting method that establishment uses to keep track of those receipts. This is a legal conclusion which we review de novo. Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989).

The plain language of the statute seems fairly simple. One need do no more than take the average receipts and do the math. The confusion comes from the parties' differing ideas about what constitutes "receipts" within the meaning of the FLSA. *Black's Law Dictionary* defines "receipt" as the "[a]ct of receiving; also, the fact of receiving or being received; that which is received." BLACK'S LAW DICTIONARY 1268 (6th ed.1990). *Webster's Dictionary* defines "receipt" as "3. the act or process of receiving . . . 4. something (as, food, goods, money) that is received" and offers the following sample usage: "took the day's [receipts] to the bank's night depository." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (Philip Babcock Grove, ed.1986). Accordingly, the district court held that the plain language of the FLSA makes it clear that "receipts" refers to money which is actually received at the time it is actually received.

The Cincinnati Reds argues, however, that an establishment's method of accounting for the cash it receives should factor into the definition of "receipts." Under the cash method of accounting, a company records money as income the moment it is received. This method has the advantage of being simple, but often fails accurately to reflect the nature of the business, especially where the company's customers pay for products or services in advance. On the other hand, the accrual method of accounting does not record money as income until the underlying obligation (e.g., delivery of the product, performance of the service, etc.) has taken place.

The evidence seems clear that the accrual method of accounting best reflects the operation of the Cincinnati Reds. The Reds receives income during the off-season, but almost all of it is tied directly to the playing of baseball games during the season. For example, the Reds receives money in the off-season for season-tickets and tickets for specific games, but does not record that money as income until the specific games are actually played. Until the actual game or games is played, the Reds keeps the money in a separate bank account. If any game is not played, then the Reds must refund the money to the ticket holder, something that actually happened during the baseball player's strike of 1994. The same is true for broadcast rights to the baseball games as well as advertising rights, both significant sources of "off-season" revenue. The Reds uses the accrual method of accounting to more accurately match up these revenues with the expenses incurred in generating them.

The district court held against the Reds, despite its recognition that "[t]here is no question that [the accrual method]'s the best method of accounting to show the nature of just about every business that you could think of." According to the district court, "There is no question that the accrual method best reflects income earned and expenses attributed to that income. And, indeed, that's why Major League Baseball and Generally Accepted Accounting Principles mandates [sic] its use." Despite his recognition that the accrual method best reflected the operation of the Reds, the district court held that the plain language of the statute demanded the opposite result. In the words of the district court, "the statute speaks in terms, not of *income,* but in terms of *receipts.*" (emphasis added).

■ We must agree with the district court, although we think that the result of doing so is illogical. There is no question that the accrual method best reflects the nature of the income accruing to the Cincinnati Reds, but the plain language of the statute does not refer to "income." If Congress had wanted the operation of § 213(a)(3)(B) to hinge upon the method of accounting used by an establishment or on the income accruing to that establishment, then it should have chosen appropriate statutory language. There is no applicable legislative history on this issue, but even if there were, we could not look to the legislative history to contravene the clear and unambiguous language of the statute. *Pipefitters Local Union No. 562 v. United States,* 407 U.S. 385, 446, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972) ("As Justice Black observed, '(n)o legislative history can justify judicial emasculation' of the unambiguous language of a statute.") (quoting *Maryland Cas. Co. v. Cushing,* 347 U.S. 409, 437, 74 S.Ct. 608, 98 L.Ed. 806 (1954) (Black, J., dissenting)); *see also Toibb v. Radloff,* 501 U.S. 157, 164, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (holding

that "it makes no difference whether the legislative history affirmatively reflects ... an intent [to prohibit a certain activity], [if] the plain language of the statute allows [that same activity]"). Moreover, the Supreme Court has held, in no uncertain terms, that the FLSA is to be construed liberally to further its broad remedial purpose and that "exemptions are to be narrowly construed against the employers." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

The Reds cites two decisions in which a court has applied § 213(a)(3) to exempt baseball teams from operation of the FLSA, but these cases contain no analysis on the issue of what constitutes a "receipt." The case most like the present one involved a suit brought by batboys working for the Detroit Tigers. *Adams v. Detroit Tigers, Inc.*, 961 F.Supp. 176 (E.D.Mich.1997). In *Adams*, the comptroller of the Detroit Tigers showed that the Tigers met the second prong of the seasonality test under § 213(a)(3)(B) by presenting the baseball club's receipts using the accrual method. *Id.* at 178. The plaintiff did not challenge the figures and the court accepted them without discussion. *Id.* at 180. Again, in *Jeffery v. Sarasota White Sox Inc.*, the court held that the baseball franchise met the seasonality test without discussing the method of accounting used. 64 F.3d 590, 595 (11th Cir.1995). *Jeffery* is even less helpful, however, because the court found, as an alternative basis for applying the exemption, that the Sarasota White Sox, a minor league baseball team, operated for not more than seven months out of the year. *Id.* at 596.

Next, the Reds argues that the district court's holding that "receipts" means "money received" contradicts the holding of a prior Sixth Circuit decision, *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255 (6th Cir.1987). As an initial matter, we point out that the issue on appeal in *Brock* was not whether the amusement establishment could pass the receipts test, but whether the FLSA required

an establishment to be open to the general public in order to qualify for exemption. The district court had denied exempt status to a country club because that club was open only to members who paid yearly dues. We reversed the district court's decision, holding that nothing in the FLSA requires an amusement establishment to be open to the general public in order to qualify for exemption under § 213(a)(3). *Id.* at 1259.

Because the district court in *Brock* based its decision on the fact that the country club was not open to the general public, it never reached the question of whether the country club could satisfy either prong of § 213(a)(3). After noting that the country club was not open for less than seven months of the year and was therefore ineligible for exemption under § 213(a)(3)(A), the *Brock* Panel remanded the case to the district court "to determine what method of accounting accurately reflects [defendant's] 'receipts' for the purposes of the seasonality exemption."[1] *Brock*, 817 F.2d at 1259. Not surprisingly, the Reds cite this part of the *Brock* case for the proposition that the Sixth Circuit looks to the method of accounting to calculate an establishment's "receipts" for the purposes of § 213(a)(3)(B).

The country club's ability to satisfy the receipts test in § 213(a)(3) was not necessary to the holding in *Brock*, which means that the part of the opinion discussing the receipts test is dicta. Dicta, like legislative history, is of little help in the face of clear and unambiguous statutory language. Here, the statute leaves no room for interpretation and it certainly says nothing about income or methods of accounting.

We are sympathetic to the intuitive appeal of the common-sense approach hinted at in *Brock* and argued for here by the Reds. The district court noted, and we agree, that the accrual accounting method best reflects how the Reds really runs its business. In addition, the employees at issue here do exactly

---

1. The country club in *Brock* assessed its membership fees in the month of April, but allowed its members to pay the fees in regular monthly installments. Looking only at bank deposits (*i.e.*, when the country club received the money for its dues), the country club failed to meet the receipts test because the deposits for the lowest six

months were 63.5 percent of those for the highest six months. The country club claimed, however, that it used an accrual accounting method which counted all membership fees as income for the month of April, regardless of when the money was actually received.

the kind of intermittent seasonal work for which the seasonality exemption to the FLSA's wage restrictions was designed. They are stadium cleaning crew who may work extremely long hours during weeks when the team is playing a series at home, very few hours during weeks when the team is away, and no hours when the season is over. Indeed, the question begs to be asked: What sort of amusement establishment could be more seasonal than one whose only business is to showcase the talents of the Boys of Summer?

## III.

But the law is the law. Moreover, the law is the way it is because Congress made it that way. Often, as here, the law leads to what seems like a counterintuitive result, but it is not the duty of the courts to correct the oversights or perfect the schemes of Congress. The district court was correct to find that the plain language of § 213(a)(3)(B) instructs the courts to look at an establishment's receipts, and not its income or its method of accounting. For that reason, we AFFIRM the decision of the district court that the Reds does not qualify for exemption from the FLSA pursuant to § 213(a)(3)(B).

COLE, Circuit Judge, concurring.

I agree with the majority's well-reasoned conclusion that the district court did not err in deciding that the Cincinnati Reds baseball franchise does not qualify as a seasonal entertainment establishment under the FLSA, and is not, therefore, exempt from the statute pursuant to § 213(a)(3)(B). The majority correctly concludes that the clear and unambiguous language of § 213(a)(3)(B) requires us to look at a seasonal entertainment establishment's receipts, and not its income or its accounting method, in determining whether the Reds falls within that exception. I write separately to express my disagreement with the majority's characterization of the result in this case being "illogical" and "counterintuitive."

I believe that we are presented with a difficult question because Congress has provided us with so little guidance in § 213(a)(3)(B)'s legislative history. The majority correctly states that the FLSA is a broad remedial statute, and that its exemp-

tions are to be narrowly construed. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Salyer v. Ohio Bureau of Workers' Compensation*, 83 F.3d 784, 786 (6th Cir.1996). Congress certainly must have known that nearly all businesses operate under the accrual method of accounting; thus, it likely would have chosen to use "income" rather than "receipts" if it had desired to create a broader exception for seasonal amusement establishments in § 213(a)(3)(B). For whatever reason, Congress consciously decided to forego using terms such as "income when earned" or "receipts which accrue," and instead, chose the word "receipts." Therefore, I agree with the majority that the plain meaning of § 213(a)(3)(B)'s language requires us to analyze the Reds' "receipts" in determining whether the Reds fall within § 213(a)(3)(B)'s exemption.

I respectfully disagree, however, that holding the Reds to this plain meaning interpretation of § 213(a)(3)(B) leads to an illogical or counterintuitive result. Although the accrual method of accounting more accurately matches up the Reds' revenues with its expenses, I would find it problematic to insulate the Reds from the FLSA's overtime requirements merely because it does not record its off-season revenue as income until its actual games are played from April through October. The majority emphasizes that the Reds keep season ticket revenues paid by its ticket holders in a separate bank account, and that the Reds must refund the money to the ticket holder if the game is not played (e.g., during a player strike). However, I have no doubt that the Reds receive substantial interest or similar revenue on those season ticket revenues while those funds are held in a separate bank account. Thus, I believe that it is quite logical that Congress chose not to exempt an organization like the Reds from paying an employee like Daisy S. Pearl an additional $2.75 per hour above her regular rate of $5.50 per hour for overtime hours, because the Reds clearly benefit financially by receiving significant amounts of its revenue in the off-season. Accordingly, the "receipts" test of § 213(a)(3)(B) does not need to be "corrected" or "perfected" by this court because I believe Congress meant what

it said and said what it meant: a business operation like the Reds cannot insulate itself from the FLSA's overtime requirements if it enjoys the benefit of receiving substantial amounts of revenue during the off-season months.