United States Court of Appeals,

Eleventh Circuit.

No. 94-3539

Non-Argument Calendar.

Ronald R. JEFFERY, Plaintiff-Appellant,

v.

SARASOTA WHITE SOX, INC., Defendant-Appellee.

Sept. 15, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-1847-CIV-T-24C), Susan C. Bucklew, Judge.

Before KRAVITCH, ANDERSON and CARNES, Circuit Judges.

PER CURIAM:

We AFFIRM on the basis of the Order of the district court dated November 10, 1994, attached as an appendix and hereby incorporated into and made a part of this opinion.[1]

AFFIRMED.

APPENDIX

RONALD R. JEFFERY, Plaintiff,

v.

SARASOTA WHITE SOX, INC., Defendant.

Case No. 93-1847-Civ-T-24(C)

---

[1]We note that this case can be distinguished from *Brennan v. Six Flags over Georgia, Ltd.,* 474 F.2d 18 (5th Cir.1973), *cert. denied,* 414 U.S. 827, 94 S.Ct. 47, 38 L.Ed.2d 61 (Fifth Cir.1973), in which the Fifth Circuit denied the FLSA exemption for amusement park employees who performed construction work during the off season. The panel in that case rested its decision on a factual finding that the construction work at issue was not of the same nature as amusement park work. In this case, the work at issue—groundskeeping for baseball games—is of the same nature as recreational establishment work.

United States District Court
Middle District of Florida
Tampa Division


*ORDER*

This cause comes before the Court for consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 18, filed May 16, 1994) and Defendant's Motion for Summary Judgment (Doc. No. 23, filed June 27, 1994. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on July 7, 1994 (Doc. No. 28).

*Statement of Facts*

The parties do not dispute the relevant facts in this action. Plaintiff filed this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (hereinafter "FLSA") seeking damages for unpaid overtime wages. Plaintiff is a grounds keeper who has been employed by Defendant since 1989 to maintain the baseball complex located in Sarasota, Florida. His responsibilities include the preparation of the fields for baseball games, including watering and mowing the grass, chalking lines and covering the fields when necessary. He receives the same salary each week regardless of the number of hours he works. Plaintiff claims that he is entitled to recover payment of time and a half for hours he alleges he has worked in excess of forty hours per week since 1989. Defendant is a wholly owned subsidiary of the Chicago White Sox, Ltd. Defendant owns a minor league baseball franchise affiliated with the Chicago White Sox. Defendant utilizes the baseball complex owned by the City of Sarasota pursuant to a "Minor League Baseball Facility Lease" (hereinafter "Lease") entered into by Defendant and the City of Sarasota on or about February 1,

APPENDIX—Continued

1989. The Lease provides that Defendant has the right to use the entire sports complex for major league spring training as well as minor league activities.

The City of Sarasota owns the baseball complex which is open all year round. It is only used by Defendant on a seasonal basis. The Chicago White Sox hold spring training in the sports complex in Sarasota during the month of March of each year. Defendant begins play in April and continues to play up to the end of August of each year. The Lease provides that other organizations are permitted to utilize the facilities when the complex is not being utilized by Defendant.

In order to provide Defendant full direction and control of the grounds keeping staff as well as the grooming and maintenance of the baseball fields, the Lease provides that Defendant is fully responsible for the performance of all maintenance on the baseball fields. Defendant is also responsible for all the costs and expenses which are reasonably involved in the maintenance of the baseball fields in connection with baseball activities. The City of Sarasota bears the cost of maintaining the fields for any use other than Defendant's use for baseball activities.

*Motions for Summary Judgment*

Plaintiff claims that he is entitled to summary judgment since there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Plaintiff claims that the only legal issue which must be resolved is whether or not Defendant is exempt from the overtime provisions of the FLSA under 29 U.S.C. §

213(a)(3). Plaintiff claims that the legal issue should be resolved in his favor based upon the legal authority set forth in his Memorandum of Law (Doc. No. 19).

Defendant asserts that Plaintiff's Motion for Summary judgment should be denied and that its Motion for Summary Judgment should be granted since Plaintiff's claim for overtime wages pursuant to 29 U.S.C. § 207(a) is barred as a matter of law. Pursuant to 29 U.S.C. § 213(a)(3), the overtime provision of 29 U.S.C. § 207(a) does not apply to employees such as Plaintiff who are employed by "an amusement or recreational establishment" such as Defendant whose average receipts in any six-month period do not exceed one-third of its receipts for the other six months of the year.

The Court having considered the Motions for Summary Judgment and otherwise being fully advised, concludes that Defendant's Motion for Summary Judgment should be granted and that Plaintiff's Motion for Summary Judgment should be denied.

*Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party

discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553-54. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits APPENDIX—Continued
and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S.Ct. at 2512.

## *Analysis*

Defendant claims that it is not required to pay Plaintiff overtime for any hours he may have worked in excess of forty hours a week during the course of his employment. Defendant asserts that it is an amusement or recreational establishment which is exempt from the provisions of FLSA under 29 U.S.C. § 213(a)(3) which provides that:

> (a) the provisions of section 206 ... and section 207 of this title shall not apply with respect to—
>
> > (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 331/3 per centum of its average receipts for the other six months of such year,....

Exemptions under the FLSA are to be construed narrowly against

the employer who asserts them. *Brock v. Louvers and Dam*PENDIX—Continued

pers, Inc., *817 F.2d 1255, 1256 (6th Cir.1987),* citing Arnold v. Ben Kanowsky, *361 U.S. 388, 396, 80 S.Ct. 453, 458, 4 L.Ed.2d 393 (1960). The employer has the burden of showing that it is entitled to the exemption.* Id. at 1256, citing Arnold, *361 U.S. at 397, 80 S.Ct. at 458-59. For the purpose of determining whether or not Defendant's business falls within the exemption, the critical question is whether or not Defendant's business is truly seasonal.* Id. at 1259. *The Court finds that Defendant has met its burden of showing that its operation of major league spring training baseball games as well as of minor league baseball games falls within the realm of an amusement and recreational establishment.*

A. Defendant is an Amusement or Recreational Establishment

Defendant claims that it is clearly an amusement or recreational establishment as contemplated under the provisions of the FLSA. Amusements or recreational establishments are "establishments frequented by the public for its amusement or recreation." *Brock,* 817 F.2d at 1257, *citing* 29 C.F.R. § 779.385. The Court finds that Sarasota White Sox, Inc. is an amusement and recreational establishment pursuant to 29 U.S.C. § 213.

" "Sports events' are among those types of recreational activities specifically considered by Congress to be covered by the exemption." *Bridewell, et al. v. The Cincinnati Reds,* Case No. C-1-92-203 (S.D.Oh.) Report and Recommendation of February 14, 1994, p. 5 *adopted and modified* by District Court Judge on March 24, 1994 (Summary judgment granted in favor of the Cincinnati Reds; as

owner of a Major League baseball franchise who played games at Riverfront Stadium in Cincinnati, Ohio. The Cincinnati Reds fell within the realm of an amusement and recreational establishment and were not required to pay maintenance workers overtime), *citing* H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965); *see also* Wage and Hour Opinion Letter No. 623, Lab.L.Rep. (CCH) ¶ 30,612 (June 22, 1967).

This Court finds that the Defendant's status as an amusement and recreational establishment is not rendered inapplicable by the fact that Defendant does not own the sports complex in which it operates. *See Bridewell,* Report and Recommendation at 6, *citing* S.Rep. No. 145, 87th Cong., 1st Sess. 28 (1961); H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ("Lessees or independent contractors, such as concessionaires, and inherently mobile establishments, such as carnivals and circuses, none of which would be expected to own the real property upon which they operate, were clearly contemplated by Congress as being covered by the exemption").

B. Defendant's Average Receipts

An establishment is seasonal if it satisfies the six-month receipts test, even if the establishment is open for more than seven months a year. *See Brock v. Louvers and Dampers, Inc.,* 817 F.2d 1255, 1259 (6th Cir.1987). Defendant claims that since its average receipts for the six off-season months of September through April in the years in question are clearly less than one-third of its receipts for the other six month period beginning in March and ending in August of the years in question, Defendant as an

amusement and recreational establishment is not required to pay Plaintiff overtime wages for hours worked in excess of forty hours a week during 1990, 1991, 1992, 1993 and 1994.

Virtually all of Defendant's receipts are derived from spring training games APPENDIX—Continued played at the complex in March and minor league games played at the complex from April through August. Defendant's receipts are generated from ticket sales, concession and parking revenues, promotional sponsorships, publication sales, advertising and other miscellaneous items. (*See* Affidavit of William D. Waters, Doc. No. 27, Exhibit B).

For the fiscal year ending October 31, 1991, Defendant's receipts for the entire year totalled $477,355. (*See* Exhibit 2 to Affidavit of William D. Waters, Doc. No. 27, Exhibit B). $476,339 accrued during March through August of that year whereas $1,016 accrued during the six off-season months. Defendant's average receipts for the six off-season months in 1991 constituted 0.21% of its receipts for the six month period beginning in March and ending in August.[1] *Id.*

For the fiscal year ending October 31, 1992, Defendant's receipts for the entire year totalled $543,120. *Id.* $540,506 was the amount accrued during March through August of that year whereas $2,614 accrued during the six off-season months. Defendant's average receipts for the six off-season months in 1992 constituted

---

[1]Even if the receipts are calculated on a cash basis rather than an accrual basis, the receipts for the six off-season months in fiscal year 1991 only constitute 24.62% of the receipts for March through August of fiscal year 1991.

0.48% of its receipts for the six month period beginning in March and ending in August.[2] *Id.*

For the fiscal year ending October 31, 1993, Defendant's receipts for the entire year totalled $607,969. *Id.* $607,646 accrued during March through August of that year whereas $323 accrued during the six off-season months. Defendant's average receipts for the six off-season months in 1993 constituted 0.05% of its receipts for the six month period beginning in March and ending in August.[3] *Id.*

The Court finds that since Defendant's average receipts for the six off-season months of September through April in 1991, 1992 and 1993 are clearly less than one-third of its receipts for the other six month period beginning in March and ending in August of 1991, 1992, 1993, Defendant is exempt from the provisions of FLSA for payment of Plaintiff's overtime wages claimed for the years of 1992, 1993 and 1994 pursuant to 29 U.S.C. § 213(a)(3). Therefore, Defendant is entitled to summary judgment as matter of law as to Plaintiff's claims which pertain to overtime wages claimed for the years of 1992, 1993, and 1994.

However, Defendant is not entitled to summary judgment to the extent that it claims that it is exempt from the payment of overtime wages for work performed during 1990 and 1991 based on its

---

[2]Even if the receipts are calculated on a cash basis rather than an accrual basis, the receipts for the six off-season months in fiscal year 1992 only constitute 24.24% of the receipts for March through August of fiscal year 1992.

[3]Even if the receipts are calculated on a cash basis rather than an accrual basis, the receipts for the six off-season months in fiscal year 1993 only constitute 22.80% of the receipts for March through August of fiscal year 1993.

average receipts. Defendant presented evidence of its average receipts for the years of 1991, 1992 and 1993, which are the years preceding 1992, 1993 and 1994. But, Defendant failed to present any evidence which tends to show that Defendant's average receipts for the six off-season months of September through April in 1989 and 1990 are less than one-third of its receipts for the other six month period beginning in March and ending in August of 1989 and 1990, which are the calendar years preceding 1990 and 1991.

C. Length of Seasonal Operation

Even though Defendant has not shown that it is entitled to an exemption for the years of 1990 and 1991 based on its average receipts in 1989 and 1990, the Court finds that Defendant is entitled to the exemption for the years of 1989 and 1990 since its operation does not last for more than seven months in any calendar year. 29 U.S.C. § 213(a)(3). There is no question of material fact as to the length of Defendant's seasonal operation in Sarasota. Accordingly, Defendant is entitled to summary judgment.

The evidence shows that spring training in the sports complex in Sarasota begins and ends in March of each year. Defendant begins play in April and continues to play up to the end of August of each year. Accordingly, Defendant's operation at the baseball complex in Sarasota lasts approximately five months each year which is two months less than the seven month period afforded under 29 U.S.C. § 213(a)(3).

The fact that Plaintiff was employed in the off-season months relative to the preparation and maintenance of the baseball fields

does not alter the Court's finding that Defendant's operation does not last longer than seven months in any calendar year. The focus on the exemption is not on the length of time Plaintiff performed his work. Rather, the focus is on length of the Defendant's seasonal operation. *See Bridewell,* Report and Recommendation at 10, *citing Brock,* 817 F.2d at 1259. It is the revenue-producing operation of the Sarasota White Sox as a professional baseball franchise which affords it the protection of the exemption. *Id.,* Report and Recommendation at 8, *citing Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115 (5th Cir.1974). 29 U.S.C. § 213(a)(3) does not require Defendant to completely shut down or to terminate every employee at the end of each baseball season. *Id., citing* Wage and Hour Opinion Letter No. 1361, Lab L.Rep. (CCH) ¶ 30,974 (January 24, 1975).

For the forgoing reasons, the Court finds that Defendant is an amusement or recreational establishment which is exempt from the mandatory overtime provisions of the FLSA under 29 U.S.C. § 213(a)(3). Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (Doc. No. 18) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 23) is GRANTED. The Clerk is directed to CLOSE this case.

DONE AND ORDERED at Tampa, Florida, this 10 day of November, 1994.