Israel **ALVAREZ PEREZ**, Plaintiff,

v.

**SANFORD–ORLANDO KENNEL CLUB, INC., Jack Collins,** Defendants.

**No. 6:05–cv–269–Orl–28JGG.**

United States District Court, M.D. Florida, Orlando Division.

May 25, 2006.

Konstatine E. Pantas, Mary E. Lytle, Pantas Law Firm, P.A., Orlando, FL, for Plaintiff.

Barnett Quinton Brooks, Barnett Q. Brooks & Associates, LLC, Sarasota, FL, for Defendants.

### ORDER

ANTOON, District Judge.

On February 22, 2005, Plaintiff Israel Alvarez Perez ("Plaintiff") brought the instant action alleging that Defendants Sanford–Orlando Kennel Club ("SOKC"), Jack Collins Sr., and Collins & Collins, d/b/a CCC Racing (hereinafter "CCC Racing") failed to pay him overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), Florida common law, and Chapter 448.08, Florida Statutes. This cause is before the Court on Defendants' motion for summary judgment (Doc. 34) and Plaintiff's response in opposition (Doc.

48). For the reasons stated below, Defendants' motion shall be denied.

## I. BACKGROUND

SOKC and CCC Racing provide greyhound racing and parimutuel wagering in a racetrack facility located in Longwood, Florida. SOKC operates the racetrack's "winter race meet" from November to May of each year and CCC Racing operates the racetrack's "summer race meet" during the remaining months of the year. The majority shareholder and managing agent for both companies is Jack Collins Sr.

Plaintiff was employed as a maintenance worker at the Longwood racetrack facility from approximately March 7, 2001 to February 28, 2003. Am. Compl., Doc. 22 ¶ 4. Depending on whether the "summer race meet" or "winter race meet" was in session, either CCC Racing or SOKC issued Plaintiff's paychecks. The instant action arises from Plaintiff's claim that, during the course of his employment at the racetrack, he worked in excess of forty hours a week for numerous weeks yet was not compensated for this work at a rate of not less than one and one-half time the regular rate at which he was paid.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991); *see also* Fed. R.Civ.P. 56(e) (providing that nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

"Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F.Supp.2d 1257, 1262 (D.Kan.2003) (citing *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (internal quotations and citation omitted).

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants base their motion for summary judgment on the following grounds. First, Defendants contend that Plaintiff's FLSA claim is barred by an exemption in the FLSA for employees employed by recreational establishments which operate for less than seven months in any calendar year. Second, Defendants maintain that Plaintiff's claim is barred by an earlier agreement by Plaintiff to release SOKC and companies related to SOKC from any and all claims, including claims for unpaid overtime wages. Third, Defendants submit that Plaintiff's claim is barred by the FLSA's two-year statute of limitations. Finally, Defendants contend that Jack Collins Sr. should be dismissed from this case, because he did not share an employer-employee relationship with Plaintiff as he must have in order to be held liable under the FLSA.[1]

### A. EXEMPTION FOR RECREATIONAL ESTABLISHMENTS

■ The FLSA provides that "[m]inimum wage and maximum hour requirements ... shall not apply with respect to ... any employee employed by an establishment which is an amusement or recreational establishment ... if ... it does not operate for more than seven months in any calendar year." 29 U.S.C. § 213(a)(3). In order to successfully claim this exemption, an employer must show that it is a "truly seasonal" establishment which is "frequented by the public for its amusement or recreation." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995). Like other FLSA exemptions, the exemption for amusement or recreational establishments must "be construed narrowly against the employer who asserts [the exemption]." *Id.* Additionally, it is the employer who bears "the burden of showing that it is entitled to the exemption." *Id.*

### 1. WHETHER THE GREYHOUND RACES OFFERED BY SOKC AND CCC RACING ARE FREQUENTED BY THE PUBLIC FOR AMUSEMENT AND RECREATION

■ Greyhound races are sports events. *See* Wikipedia, The Free Encyclopedia, at http://en.wikipedia.org/wiki/Greyhound—racing ("Greyhound racing is the sport of racing greyhounds."); *see also Marshall v. New Hampshire Jockey Club, Inc.,* 562 F.2d 1323, 1328 (1st Cir.1977) (identifying thoroughbred racing and harness racing as sports). As such, greyhound races "are among those types of recreational activities specifically considered by Congress to be covered by the [FLSA's exemption for seasonal recreational establishments]." *Jeffery,* 64 F.3d at 595. The question of whether the seasonal recreational establishment exemption applies to SOKC and CCC Racing hinges entirely, therefore, on whether the two companies are *truly seasonal* establishments.

### 2. WHETHER SOKC AND CCC RACING ARE "TRULY SEASONAL" ESTABLISHMENTS

While the FLSA does not define "establishment," the Secretary of Labor has

---

1. Defendants argue more specifically that, because "neither Jack Collins Jr. nor Jack Collins Sr. had operational control" of CCC Racing and SOKC, "the action against Jack Collins ... must be dismissed." Doc. 35 at 7. Defendants raise this argument on behalf of both Jack Collins Sr. and Jack Collins Jr. (otherwise collectively known as "Jack Collins") because Plaintiff named only "Jack Collins" as an individual defendant in this case. However, Plaintiff has since clarified that he did not intend to name Jack Collins Jr. as a defendant. Doc. 48 at 13 n. 3. Accordingly, Defendants' argument that "Jack Collins" should be dismissed from this case will be addressed only as to Jack Collins Sr.

promulgated regulations which define the term as "a distinct physical place of business." 29 C.F.R. § 779.23 (internal quotations omitted). Were this definition dispositive of whether SOKC and CCC Racing qualify as seasonal establishments, analysis of the issue would prove no more complicated than this: under the Secretary of Labor's definition, CCC Racing and SOKC are not establishments (seasonal or otherwise), because, in contrast to the facility in which their operations are housed, neither company is a "physical place of business."[2]

This analysis does not, however, square with the Eleventh Circuit's determination in *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594–95 (11th Cir.1995), that a minor league baseball organization which operated only during the months of spring training was entitled to exemption from the FLSA as a seasonal recreational establishment. In contrast to the sports complex in which the White Sox held its spring training, the organization was obviously no more a "physical place of business" than SOKC or CCC Racing. Moreover, while the Eleventh Circuit stopped short of providing a definition of establishment different than that of the Secretary of Labor, the court made clear that "[t]he focus on the exemption [for seasonal recreational or amusement establishments] is not on the length of time [an employee] performed his work [but instead is] on the length of

the [employer's] seasonal operation." *Id.* at 596. Thus, although the plaintiff in *Jeffery* worked at the same baseball complex year-round, he was not entitled to overtime compensation under the FLSA, because his employer only employed him for "approximately five months each year." *Id.*

There is no question that, in light of *Jeffery*, analysis here must focus on the length of CCC Racing and SOKC's operations. This case, however, involves a complication that was not present in *Jeffery*. Because CCC Racing and SOKC operate in the same facility under common ownership, the question arises whether the two companies should be treated as separate seasonal establishments or as a single establishment that operates year-round.

In the only case which provides clear guidance on this issue, the First Circuit, in *Marshall v. New Hampshire Jockey Club, Inc.*, observed that the crucial factor in determining whether two businesses constitute a single establishment or separate establishments under the FLSA is "the integrity of the economic, physical and functional separation between the business units." 562 F.2d 1323, 1330 (1st Cir.1977). Like CCC Racing and SOKC, the defendants in *Marshall*, Jockey and Trotting, operated in the same physical facility under common ownership. *Id.* at 1327–29. However, while Jockey operated thorough-

**2.** Strictly speaking, under the Secretary of Labor's definition, Plaintiff was not employed *by* any establishment; he merely worked at, or within, an establishment which housed the operations of his employers. Although the racetrack facility where Plaintiff worked obviously qualifies as a "physical place of business," Plaintiff could not have been employed by the racetrack facility, because the racetrack is not an *employer* as defined by the FLSA. An *employer* under the FLSA includes "any *person* acting directly or indirectly in the interest of an employer in relation to an em-

ployee...." 29 U.S.C. § 203(d) (emphasis added). A *person*, in turn, "means an individual, partnership, association, corporation, business, trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). In contrast to SOKC and CCC Racing, which are, respectively, a corporation and a business partnership, the racetrack facility in which the two companies operate is merely a physical structure that is, in no sense, a person and cannot, therefore, be an employer as the term is defined by the FLSA.

bred racing during the summer months, Trotting operated harness racing, a related but different sport, during the spring and fall.[3] *Id.* at 1327. These facts gave rise to the question, very similar to the one raised in this case, of "how to apply the exemption to two separate corporations under common ownership which utilize the same facilities at different seasons for related but separate sports and who employ many of the same individuals as employees." *Id.* at 1329.

Under the First Circuit's analysis, the common control and ownership of Jockey and Trotting was merely "one factor involved in determining whether [the] two companies were so interdependent economically as to require treatment as a single establishment." *Id.* at 1332. The more important consideration in the First Circuit's view was the "the degree that thoroughbred racing and harness racing [were] separate businesses involving different seasons, different business risks and different patterns of state regulation." *Id.* at 1332. On that score, the First Circuit found that the "different nature" of thoroughbred racing and harness racing resulted in "different schedules," "different attendance and betting patterns," and different patterns of state regulation for the two sports. *Id.* at 1332. Based on these differences, the First Circuit held that

Jockey and Trotting constituted distinct businesses for the purposes of the FLSA's exemption for seasonal recreational or amusement establishments. *Id.*

■ Defendants contend that *Marshall* "clearly supports" their position that CCC Racing and SOKC are distinct establishments. Doc. 35 at 6. What Defendants plainly ignore, however, is the *Marshall* court's emphasis on the fact that Jockey and Trotting operated two different sports with correspondingly different risks and patterns of regulation. By contrast, CCC Racing and SOKC operate the same sport—greyhound racing—and, thus, presumably face the same risks and patterns of regulation. Although CCC Racing and SOKC operate during different times of the year, this fact alone does not suffice to establish that the two companies are truly seasonal businesses. Rather, the possibility remains that CCC Racing and SOKC "were founded or maintained on a separate basis for spurious or sham reasons." *Id.* at 1332; Doc. 48 at 6 ("Defendants willfully ... circumvent paying overtime to their employees by *artificially* creating 'racing seasons' ....") (emphasis added).[4] This and potentially other issues of fact must be resolved before the question of whether CCC Racing and SOKC are the same or separate establishments can be decided.

---

**3.** The fact that Jockey and Trotting operated during separate, non-overlapping seasons formed the basis for the First Circuit's determination that there was sufficient "physical separation" between the two companies: "Temporal separation provided, in effect, for physical separation." 562 F.2d at 1331 (explaining and approving the lower court's analysis of physical separation). The First Circuit also expressed its "doubt that physical separation is as key a factor in applying an exemption based on seasonality as it may be in other situations." *Id.*

**4.** Defendants emphasize that CCC Racing and SOKC: have separate federal identification numbers; operate on different fiscal years; file separate tax returns; enjoy separate tax exemptions; and maintain separate bank accounts. These facts are of little probative value. Far from establishing that CCC Racing and SOKC are "truly seasonal" establishments or that the two companies were created for legitimate (rather than "spurious or sham") reasons, they merely demonstrate what has never been in dispute: that CCC Racing and SOKC are organized as two separate companies.

## B. WHETHER PLAINTIFF'S CLAIM AGAINST CCC RACING AND SOKC IS BARRED BY AN EARLIER RELEASE AGREEMENT

■ Prior to filing his FLSA claim, Plaintiff agreed, as part of a workers' compensation settlement, to release SOKC and "related companies ... from all claims including the nonpayment of wages, overtime, bonus, or other compensation or benefits of any kind whatsoever...." Perez Dep., Ex. 5, Doc. 35–6, at 6. According to Defendants, Plaintiff's FLSA claim is plainly barred by the clear and unambiguous terms of the release. Indeed, so convinced of their argument are Defendants that they additionally contend that Plaintiff's claim is "frivolous." Doc. 35 at 10–13.

■ There are, however, only two very narrow circumstances in which FLSA claims for back wages may be waived, compromised, or settled:

First, under [29 U.S.C. § 216(c) ], the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.

\* \* \*

The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir.1982) (footnotes in original omitted). The reason for limiting the ability of workers and employers to negotiate the rights conferred by the FLSA is rooted in the very purpose of the act: to guarantee minimally decent working conditions for those workers who, *due to insufficient bargaining power,* lack the ability to secure such conditions on their own. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Were the rights afforded by the FLSA subject to unregulated negotiation or bargaining, the plight of workers would rest once more with a process that Congress determined to be all too often tilted in favor of employers. *Id.* The purpose of the FLSA would, in other words, be defeated. *Id.* ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.").

In their rush to categorize Plaintiff's FLSA claim as frivolous, Defendants neglect to explain how, under the above-mentioned authority, the settlement of a workers' compensation claim could possibly dispose of FLSA rights. The settlement agreement of Plaintiff's workers' compensation claim obviously did not arise from a claim for unpaid wages under the FLSA; neither did it entail the supervision of the Secretary of Labor. Thus, although the merits of Plaintiff's claims have yet to be tested, the only frivolous argument to be found here is Defendants' own.

## C. WHETHER PLAINTIFF'S CLAIMS ARE BARRED BY THE FLSA'S STATUTE OF LIMITATIONS

The FLSA's statute of limitations provides that a claim for unpaid wages which

is not commenced "within two years after the cause of action accrued ... shall be forever barred ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Defendants contend that Plaintiff's FLSA claim accrued on March 3, 2003.[5] Doc. 35 at 9. Plaintiff does not dispute this. Defendants also state that Plaintiff filed his complaint on February 29, 2005. This date, however, does not exist.[6] Plaintiff actually filed his complaint on February 22, 2005. *See* Doc. 1, at 1. Having determined both the date that Plaintiff's claim accrued and the date upon which he filed his claim, the only question left is whether the FLSA's two-year or three-year statute of limitations applies in this case. As the FLSA makes plain, the answer to this question depends on whether Plaintiff has produced sufficient evidence that Defendants willfully violated the FLSA.

■ An employer's violation of the FLSA is willful if it "either knew or showed a reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Plaintiff alleges that Defendants' willfully violated the FLSA by creating two companies to do the work of one solely for the purpose of evading the requirements of the FLSA. Doc. 48 at 16–17. This allegation is supported by Defendants' failure thus far to indicate why they chose to create both CCC Racing and SOKC to perform races in the same sport at the same facility. There is, at this point, then, a reasonable basis to infer that Defendants knowingly endeavored to, and did, violate the FLSA.

### D. WHETHER JACK COLLINS SR. IS AN EMPLOYER UNDER THE FLSA

■ "The overwhelming weight of authority is that a corporate officer with operational control of corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (quotations and citations omitted). Defendants contend that Plaintiff has presented no proof that Jack Collins Sr. exercised operational control over SOKC and CCC Racing. However, in the face of evidence that Jack Collins Sr. is both the majority shareholder as well as the "managing agent" of CCC Racing and SOKC, Defendants' argument falls flat.

### IV. CONCLUSION

Based on the foregoing reasons, Defendants' motion for summary judgment (Doc. 34) is **DENIED.**

---

**5.** According to Defendants, this was the date upon which Plaintiff received his final paycheck.

**6.** February has twenty-nine days only in leap years, and leap years occur only in years divisible by four, which 2005 is not.