

## KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

February 16, 2023

The Honorable Will Metcalf
Chair, House Administration Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

**Opinion No. KP-0431**

Re: Applicability of Texas's minimum wage laws to minor league baseball players when playing baseball for one of eight minor league teams in Texas (RQ-0487-KP)

Dear Representative Metcalf:

You ask about "the applicability of Texas's minimum wage law to minor league baseball players when playing baseball for one of eight (8) minor league teams in the State of Texas."[1] You first seek confirmation that the players are exempt from Texas minimum wage provisions pursuant to section 62.151 of the Labor Code because they are "covered by" the federal Fair Labor Standards Act ("FLSA"). *See* Request Letter at 1. Alternatively, you ask whether a state-law exemption from Texas minimum wage laws applicable to an "amusement or recreational establishment" would apply to players not "covered by" the FLSA. *Id.*

**Minor league baseball players are "covered by" the FLSA.**

Chapter 62 of the Labor Code governs minimum wage in Texas. *See generally* TEX. LABOR CODE §§ 62.001–.205. Section 62.151 provides that chapter 62 does "not apply to a person covered by the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et. seq.)." *Id.* § 62.151. In chapter 62, the term "'[p]erson' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *Id.* § 62.002(7). The term "'[e]mployee' includes an individual employed by an employer," while the term "'[e]mployer' includes a person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 62.002(5), (6). Thus, the "person" covered by the Fair Labor Standards Act ("FLSA") for purposes of section 62.151 can be either an employee or an employer.

Chapter 62 does not define what it means for a person to be "covered by" the FLSA. When a statutory term is undefined, courts generally rely on its common, ordinary meaning. *Maxim*

[1]Letter from Honorable Will Metcalf, Chair, House Comm. on State Affairs, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Nov. 15, 2022), https://texasattorneygeneral.gov/sites/default/files/requestfiles/request/2022/RQ0487KP.pdf ("Request Letter").

*Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022); *see also Blankenship v. State*, 650 S.W.3d 902, 912 (Tex. App.—Fort Worth 2022, no pet.) (approving the use of dictionaries to determine "the fair, objective meaning of undefined statutory terms"). The word "covered" is commonly understood as "included in the group with respect to which a particular contract or agreement is in force." WEBSTER'S THIRD NEW INT'L DICTIONARY 525 (2002). Thus, a person is "covered by" the FLSA for purposes of section 62.151 if the person is included in the group with respect to which the FLSA applies. In other words, the initial relevant question here is whether the FLSA applies to a minor league player or the player's employer.

Subsection 206(a) of the FLSA requires an employer to pay a certain minimum wage to each employee who "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 206(a). Here, "[c]ommerce means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b). Thus, to establish FLSA coverage regarding minimum wage, an employee must show that the employee: (1) personally engaged in commerce or the production of goods for commerce ("individual coverage"); or (2) was employed by an enterprise engaged in such activity ("enterprise coverage"). *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D, 2020 WL 3317096, at *2 (N.D. Tex. June 18, 2020); *see also Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) ("*Either* individual *or* enterprise coverage is enough to invoke FLSA protection."). An employer or employee meeting one or both statutory thresholds is "covered by" the FLSA for purposes of Labor Code section 62.151.

The U.S. Supreme Court acknowledged that "[p]rofessional baseball is a business and it is engaged in interstate commerce." *Flood v. Kuhn*, 407 U.S. 258, 282 (1972) (considering professional baseball's reserve system in the federal antitrust context). Moreover, it is a matter of public record that the eight minor league teams operating in Texas travel to and compete in baseball games outside of Texas.[2] Additionally, several courts have litigated issues relating to the FLSA in the context of professional baseball with none questioning FLSA coverage in the first instance.[3] Accordingly, based on precedent and publicly available information, we can identify no basis for an argument that professional baseball players and their employers are not engaged in "commerce" as defined by the FLSA. Therefore, minor league baseball players are "covered by" FLSA in the first instance.

You point us to the Save America's Pastime Act ("SAPA"), a provision of the FLSA that exempts certain baseball players from particular sections of the FLSA, as evidence that such players are regulated pursuant to the FLSA and are thus "covered" by it. *See* Request Letter at 2–3; *see also* 29 U.S.C. § 213(a)(19). The SAPA provides that the provisions of section 206 (minimum wage) and section 207 (maximum hour),

---

[2]*See, e.g.*, the San Antonio Missions 2023 schedule, *available at* https://www.milb.com/news/san-antonio-missions-2023-schedule-announced; *see also* Request Letter at 1, n.1 (listing the minor league teams in Texas).

[3]See generally, e.g., Bridewell v. Cincinnati Reds, 68 F.3d 136 (6th Cir. 1995); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590 (11th Cir. 1995); Adams v. Detroit Tigers, Inc., 961 F. Supp. 176 (E.D. Mich. 1997).

shall not apply with respect to . . .

> (19) any employee employed to play baseball who is compensated pursuant to a contract that provides for a weekly salary for services performed during the league's championship season (but not for spring training or the off season) at a rate that is not less than a weekly salary equal to the minimum wage under section 206(a) of this title for a workweek of 40 hours, irrespective of the number of hours the employee devotes to baseball related activities.

29 U.S.C. § 213(a)(19) (footnote added).

An exemption from certain sections of the FLSA does not create coverage. *See Taylor v. HD & Assoc., L.L.C.*, 45 F.4th 833, 837 (5th Cir. 2022) (recognizing that coverage under the FLSA is independently established and must be addressed separately before the consideration of any exemption). However, existence of the SAPA as an express exemption of certain players from section 206's and 207's applicability is evidence that such players generally are "covered by" FLSA in the first instance. Indeed, other FLSA provisions potentially remain operative on minor league baseball players and their employers notwithstanding an exemption from sections 206 and 207. *See, e.g.*, 29 U.S.C. § 211(c) (requiring "[e]very employer subject to any provision of" the FLSA to comply with certain record-keeping requirements).

The applicability of any FLSA exemption to any individual player is "a necessarily fact-bound inquiry[.]" *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 83 (2d Cir. 2015). In the instant case, one would have to determine whether certain factors regarding a baseball player's individual circumstances satisfy the terms of the exemption set forth by the SAPA. Because these are fact questions, they cannot be established in an Attorney General opinion. Tex. Att'y Gen. Op. No. KP-0422 (2022) at 5 (acknowledging that inquiries involving fact questions are "beyond the scope of an Attorney General opinion"). But these individual determinations do not determine whether the player is "covered by" the FLSA in the first instance.[4] Because minor league baseball players and their employers are engaged in commerce that satisfies one or both thresholds set forth by 29 U.S.C. subsection 206(a), players are "covered by" the FLSA for purposes of Labor Code section 62.151. If the player's compensation is further consistent with the terms of the SAPA, then the player remains "covered by" the FLSA but exempt from sections 206 and 207 of the FLSA.

**Texas state law may separately exempt minor league baseball players from Texas minimum wage laws.**

In the event minor league baseball players are not "covered by" the FLSA, you alternatively ask whether minor league players are exempt from Texas minimum wage requirements pursuant

---

[4]Prior Opinion CM-0570 is overruled to the extent it is inconsistent with this opinion. *See* Tex. Att'y Gen. Op. No. CM-0570 (1970).

to section 62.158 of the Labor Code. *See* Request Letter at 1–2. That provision exempts employers from the minimum wage requirements of chapter 62

> with respect to employment in an amusement or recreational establishment that:
>
> > (1) does not operate for more than seven months in a calendar year; or
> >
> > (2) had average receipts for any six months of the preceding calendar year of not more than 33-1/3 percent of its average receipts for the other six months of the year.

TEX. LABOR CODE § 62.158. To qualify for this exemption, the employer must qualify as an "amusement or recreational establishment" and must satisfy either the calendar month operation requirement of subsection 62.158(1) or the average receipts requirement of subsection 62.158(2). *Id.* This state law provision mirrors a federal exemption in the FLSA, which provides in relevant part that its minimum wage provisions do not apply to

> any employee employed by an establishment which is an amusement or recreational establishment . . . if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year . . .

with certain exceptions not relevant here. 29 U.S.C. § 213(a)(3). As with the Texas law, the employer must qualify as an "amusement or recreational establishment" and must satisfy either the calendar month operation requirement or the average receipts requirement to fit within the exemption. *Id.* We find no judicial interpretation of section 62.158 by a federal or state court but, given the similarity to its federal counterpart, we can look to federal case law for guidance. *See Summers v. WellTech, Inc.*, 935 S.W.2d 228, 232–33 (Tex. App.—Houston [1st Dist.] 1996, no writ) (providing that the similarity between a state and federal statute allows a court "to look to federal cases as a guide to interpreting [the state] statute").

As previously noted, the applicability of any FLSA exemption is necessarily a fact-driven inquiry. *Chen*, 798 F.3d at 83. Thus, our office cannot determine as a matter of law whether the exemption in Texas Labor Code section 62.158 applies in a specific instance. Tex. Att'y Gen. Op. No. KP-0422 (2022) at 5. However, we focus on two federal appeals court cases that considered applicability of the FLSA's amusement or recreational establishment exemption in the context of professional baseball.

In *Jeffery v. Sarasota White Sox, Inc.*, the Eleventh Circuit Court of Appeals considered the exemption in a case involving overtime claims by a groundskeeper employed by the owner of a minor league baseball franchise. *See generally* 64 F.3d 590. First, noting that amusements or recreational establishments are "establishments frequented by the public for its amusement or recreation," the Court found that the Sarasota White Sox organization qualified as an amusement

and recreation establishment. *Id.* at 595 (additionally noting that sports events "are among those types of recreational activities specifically considered by Congress to be covered by the exemption"). This was the case even though the minor league baseball organization did not own the sports complex in which it operated. *See id.* Second, on the question of seasonality, the Court focused on the length of the minor league baseball organization's seasonal operation, ultimately concluding that it qualified for the exemption. *See id.* at 596 ("Defendant begins play in April and continues to play up to the end of August of each year. Accordingly, Defendant's operation at the baseball complex in Sarasota lasts approximately five months each year which is two months less than the seven month period afforded under 29 U.S.C. § 213(a)(3)."). The fact that the groundskeeper was employed in the off-season months relative to the preparation and maintenance of the baseball fields did not change the Court's conclusion that the baseball operation did not last longer than seven months in any calendar year. *See id.*

In *Bridewell v. Cincinnati Reds*, the Sixth Circuit Court of Appeals took a different approach in a case involving overtime claims by maintenance employees at a stadium leased by a major league baseball franchise. *See generally* 68 F.3d 136. Although the Court did not analyze whether the baseball franchise constituted an amusement or recreational establishment under the FLSA, it assumed for the sake of argument that it did and addressed the seasonality aspect of the amusement or recreation exemption. *See id.* at 138–39. In view of the particular facts involving the Reds' contractual obligations concerning the stadium,[5] the Court determined that the focus should be not on the duration[6] of the franchise's activities there during the baseball season but, rather, on the duration of the Reds' overall operation at the stadium. *Id.* ("The proper inquiry is . . . whether the Reds operate for more than seven months per year, not whether they are an entity that provides amusement or recreation for its customers for more than seven months per year."). The Court concluded that the Reds' employment of 120 year-round workers "compel[led] the conclusion" that the franchise was not entitled to summary judgment based on the amusement or recreational exemption. *Id.* at 139.

Notably, both cases acknowledge or assume professional baseball operates in the context of an "amusement or recreational establishment" and differ only as to whether the seasonality requirement was met under the facts presented. *See Jeffery*, 64 F.3d at 595–96; *Bridewell*, 68 F.3d at 138–39. You tell us that "[t]he 2022 season for the Texas-based minor league baseball teams began on April 5 or 8, and ended on September 18 or 28–for a total of six months." Request Letter at 2–3. Under the reasoning employed in *Jeffery*, which focused on the duration of the baseball season, a court would conclude that a six-month baseball season meets the seven-month seasonality requirement in Labor Code subsection 62.158(1). Although the *Bridewell* court reached a different conclusion, we note that the court focused on the contractual requirements of stadium maintenance employees who remained employed at the stadium beyond the baseball

---

[5]The Cincinnati Reds had an agreement with the City of Cincinnati to sell advertising at the stadium year-round, to operate the scoreboard during both their games and the games of the Cincinnati Bengals football club, and to contract with a concessionaire to operate at both Reds' and Bengals' games. *See Bridewell*, 68 F.3d at 138. Under separate contracts with the Bengals, the Reds were obligated to clean parts of the stadium when the Bengals played there. *See id.* The Reds used the maintenance employees to perform all of these functions. *See id.*

[6]The regular season began in April and ended in September, possibly extending into October if the Reds qualified to participate in league playoff games. *See id.* at 137–38.

season to perform ongoing maintenance and upkeep. *Bridewell*, 68 F.3d at 138–39. You do not provide any information concerning ongoing contractual requirements of the Texas minor league baseball players outside of the dates of the playing season that you describe. To the extent such requirements exist, they may influence whether a court would follow the approach taken by the *Bridewell* court in considering a timeframe longer than the baseball season for purposes of the seasonality requirement.

Of course, neither *Jeffery* nor *Bridewell* is binding on Texas federal or state courts for purposes of construing the terms of the amusement or recreation exemption in Texas Labor Code section 62.158. *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 300 n.1 (5th Cir. 2019) (Haynes, J., dissenting) (recognizing that out-of-circuit federal court precedent is not binding on other federal circuit courts); *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (stating that "[w]hile Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court . . . they are *obligated* to follow only higher Texas courts and the United States Supreme Court").

But while courts have historically taken a narrow approach to the consideration of FLSA exemptions,[7] we note that the Fifth Circuit Court of Appeals recently indicated a departure from the approach of other circuits of construing entitlements to FLSA exemptions narrowly and will instead give them a "fair reading[.]" *Carley v. Crest Pumping Tech., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) ("The Supreme Court recently clarified that courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by this and other circuits." (citing *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018))). This suggests that the Fifth Circuit would construe an exemption neutrally without favoring a construction that would benefit an employee. To the extent Texas state courts elect to follow the Fifth Circuit's standard of review, we expect they will construe section 62.158 according to its plain language and without applying a narrow or liberal construction.

---

[7]*See, e.g.*, *Jeffery*, 64 F.3d at 594 ("Exemptions under the FLSA are to be construed narrowly against the employer who asserts them."); *Bridewell*, 68 F.3d at 138 ("[W]e construe [the FLSA exemption] narrowly.").

**S U M M A R Y**

Texas Labor Code section 62.151 exempts "a person covered by" the federal Fair Labor Standards Act ("FLSA") from the minimum wage requirements of chapter 62. Whether a minor league baseball player or the player's employer is "covered by" the FLSA for purposes of section 62.151 is determined by whether the player "is engaged in commerce or in the production of goods for commerce" or "is employed in an enterprise engaged in commerce or in the production of goods for commerce." Based on legal precedent and publicly available information, minor league baseball players are "covered by" the FLSA. Whether the player or the employer is subsequently exempt from certain FLSA provisions pursuant to the Save America's Pastime Act ("SAPA") depends on whether the player is compensated according to the terms set forth by the SAPA. If the player's compensation is consistent with the terms of the SAPA, then the player is "covered by" the FLSA but exempt from sections 206 and 207 of the FLSA.

Section 62.158 of the same code exempts an employer from the minimum wage provisions of chapter 62 with respect to employment in an amusement or recreational establishment that: (1) does not operate for more than seven months in a calendar year; or (2) meets certain average receipt requirements. Whether the exemption applies is a fact question that cannot be answered in an Attorney General opinion. However, to the extent a court concludes that a six-month baseball season amounts to the entirety of the annual "operation" of an amusement or recreational establishment, it would conclude the exemption is satisfied.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT E. WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

AARON F. REITZ
Deputy Attorney General for Legal Strategy

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee